## AUSTIN BROS. v. FIRST BAPTIST CHURCH.

### No. 13040.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 26, 1934.

Rehearing Denied Nov. 30, 1934.

McLean, Scott & Sayers, of Fort Worth, and Julius H. Runge, of Dallas, for appellant.

Cantey, Hanger & McMahon and Chester B. Collins, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

J. W. Jones, agent and representative of Austin Brothers, a corporation doing business in the city of Dallas, approached A. L. Jackson, chairman of the board of trustees of the First Baptist Church, and submitted to him a proposition to furnish some 327 tons of steel, at $7.41 per ton, to be used in the building of the church. The proposition so submitted was in writing, signed, "Austin Brothers by J. W. Jones," and approved by Austin Brothers at its home office in Dallas. Opposite the signature of J. W. Jones was the following: "The proposal is accepted. First Baptist Church by A. J. Jackson, chairman of trustees, March 6, 1931."

After the contract was executed, J. W. Jones, representing Austin Brothers, applied to J. Frank Norris, pastor of the church, for

892

an advance payment on the contract of $5,-000, and that request was complied with by Dr. Norris; the money so paid being the property of plaintiff, and the payment being made by Dr. Norris as its representative.

This suit was instituted in Tarrant county by the First Baptist Church against Austin Brothers to recover the $5,000 so paid upon allegations that the money was procured by false and fraudulent representations, the substance of which may be stated as follows: The contract was executed by A. L. Jackson upon the condition and with the understanding then had with J. W. Jones that the same would not become effective until approved by all the other members of the board of trustees, the total number of which was five, and by the membership of the church as a body. In violation of that agreement and understanding, J. W. Jones, acting for defendant, came to Fort Worth and induced Dr. Norris to pay over to him for defendant $5,000 as advance installment for the steel to be furnished, upon representations made to Dr. Norris at the time that the contract theretofore signed by A. L. Jackson had been approved by all the other members of the board of trustees and also by the membership of the church, all of which representations were untrue.

Defendant filed its plea of privilege to be sued in Dallas county, which was its legal domicile and place of business, all in statutory form.

Plaintiff then filed a controverting affidavit, alleging in detail the facts alleged in its petition upon which the suit was based and noted above.

Upon a trial before the court without a jury, the plea of privilege was overruled, and the defendant has appealed.

■ The controlling question presented here is whether or not the evidence introduced was sufficient, prima facie, to sustain plaintiff's suit; the burden being upon plaintiff to make such proof. Hutchison v. R. Hamilton & Son (Tex. Civ. App.) 223 S. W. 864.

■■ The evidence showed that A. L. Jackson was dead at the time of the trial. Miss Jane Hartwell, who was employed by the church to do secretarial work, and Miss Elizabeth Ridgeway, who was also an employee of the church, both testified that they were present at the time Mr. A. L. Jackson accepted and signed the written proposition of the defendant to sell to the plaintiff the steel mentioned above, and that when he did so he informed J. W. Jones that he signed it upon the condition and understanding that the same was not to become effective until it was also approved by the other four members of the board of trustees and approved by the membership of the church as a body, and that J. W. Jones assented to that condition. The document shows on its face that it was never signed by any of the other four trustees; and other witnesses testified, without contradiction, that it was never approved by any of those trustees nor by the membership of the church.

Dr. J. Frank Norris, pastor of the church, testified that J. W. Jones, representing the defendant, appeared in his office and requested an advance payment of $5,000 on the contract; that he represented to witness at the time that the contract had been closed; that it had been approved by all the members of the board of trustees and also by the church membership; that he believed the representations so made to be true and was induced thereby to pay over to Jones for the defendant the $5,000 then requested. He further testified that at the time of that transaction he had just returned from a trip out of the city, after an absence of several days, and did not know that the contract had not been approved by all of the members of the board of trustees and by the membership of the church, as represented by Jones. He further testified that Jones handed him the contract at the time and that he glanced at it but never read it in detail, supposing it to be all right. He further testified that the steel was never shipped to plaintiff and that defendant refused to return the $5,000 when demand was made therefor. According to his further testimony, after payment of the money he advertised to his congregation, in effect, that steel had been contracted for to be used in the proposed church building, but that at that time he had not discovered the falsity of the representations so made to him, and that as soon as he made the discovery the membership of the church, by resolution passed, repudiated the contract and ordered the institution of this suit.

According to further testimony introduced, one of the rules for the government of the church, recognized and acted upon as a by-law of the plaintiff corporation, was that in order for a contract of the character of the one in controversy to become a binding obligation of the corporation, it must be first executed by the board of trustees and then approved by the membership of the church in a business meeting, evidence of which approval would be entered in the minutes of the church. Further evidence was introduced, to the effect that the contract in question was never approved by the membership of the

church, nor was it ever presented for such approval.

Apart from the testimony tending to support the allegations of the understanding between Jackson and Jones when the former signed the contract as chairman of the board of trustees of the church, and of which Dr. Norris said he knew nothing when he paid the $5,000 to Jones, we have reached the conclusion that the testimony of Dr. Norris, with other evidence tending to corroborate it, was sufficient, prima facie, to support the implied finding by the trial judge, trying the issue without a jury, that the $5,000 was obtained by Jones through alleged false and fraudulent representations made to Dr. Norris at the time, and we cannot disturb that ·finding, since the trial judge was the exclusive judge of the credibility of the witnesses. Whether Dr. Norris, in the exercise of due prudence, should have discovered the falsity of the representation of Jones before paying the $5,000 is immaterial. 20 Tex. Jur. § 34, p. 58; § 37, p. 65; § 72, p. 110.

We express no opinion as to the merits of any relief that may be sought by plaintiff on final trial, based on the alleged agreement of Jones when Jackson signed and delivered to him the proposed contract, or on the merits of any defense to plaintiff's suit or counterclaim that defendant may urge on the trial of the case on its merits.

For the reasons stated, the judgment of the trial court overruling defendant's plea of privilege is affirmed.

### On Motion for Rehearing.

It is insisted that our decision on original hearing is in conflict with numerous decisions cited, some by this court, a discussion of many of which were cited in appellant's brief. The point is made that this present suit is for breach of contract and not for tort, and therefore venue was in Dallas county and not in Tarrant county. Plaintiff's petition embodied two counts; the first was clearly for alleged fraudulent representations made in Tarrant county inducing the payment to defendant in the same county of $5,000 on a purported contract executed by A. L. Jackson as chairman of the board of trustees of the church, which, according to allegations, never became a binding obligation of plaintiff church for lack of authority in Jackson to so bind it, and which plaintiff sought to have canceled for that reason, in addition to its prayer for recovery of the $5,000 paid to defendant by Dr. Norris.

Those facts clearly distinguish this case as alleged in the first count of its petition from the many decisions cited, a detailed review of which would unduly extend this opinion. And plaintiff's alternative prayer for recovery for breach of contract in the second count of the petition, in the event of failure to recover on the first count, could not be construed as fixing the character of the first count as a suit for breach of contract rather than for tort.

The motion for rehearing is overruled.